IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Iris Henry-Aiken, : 
           Petitioner : 
               : 
         v. : No. 1958 C.D. 2015
               : Submitted: March 4, 2016
Workers' Compensation Appeal : 
Board (Vanguard Group, Inc.), : 
              Respondent : 
               : 
Petition of: Larry Pitt, Esq. : 


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI         FILED: March 21, 2016


Larry Pitt, Esquire (Petitioner) petitions for review of an order of the Workers' Compensation Appeal Board (Board) reversing a Workers' Compensation Judge's (WCJ) allocation of attorney's fees earned with respect to the settlement of Iris Henry-Aiken's (Claimant) workers' compensation claim between her prior and current counsel. For the reasons that follow, we affirm.


**I.**

On May 22, 2012, Claimant sustained a work-related injury with respect to which she engaged Larry Pitt & Associates (Prior Counsel) as her legal

representative on May 25, 2012. The workers' compensation contingent fee agreement into which she entered provided, "in the event that I receive or am permitted to continue to receive my workers' compensation benefits, my attorney, Larry Pitt & Associates, will receive twenty percent (20%) of all compensation payable to me for as long as I receive workers' compensation benefits." (Certified Record [C.R.], Transcript of 5/8/14 Hearing, Claimant's Ex. C-1.)

Pursuant to the Workers' Compensation Act (Act),[1] Prior Counsel filed a claim petition on Claimant's behalf, seeking compensation for her lost wages because Vanguard Brokerage (Employer) previously issued a medical-only notice of temporary compensation payable, which converted into a medical-only notice of compensation payable. Prior Counsel litigated the claim petition through five hearings, presented Claimant's testimony before the WCJ, deposed her treating physician, and cross-examined Employer's medical expert.

After the record regarding the claim petition was closed but before the WCJ rendered a decision, by letter dated June 24, 2013, Claimant discharged Prior Counsel "effective immediately." (*Id.* at Ex. J-2.) Subsequently, on July 10, 2013, she engaged Pond Lehocky Stern Giordano, LLP (Subsequent Counsel), pursuant to a contingency fee agreement providing for a twenty percent (20%) attorney's fee. With respect to the claim petition, Subsequent Counsel did not seek to reopen the record or to file any briefs on Claimant's behalf.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1—1041.4, 2501—2708.

2

On July 30, 2013, the WCJ issued a decision granting Claimant's claim petition and directing Employer to pay $823.80 per week to Claimant from May 23, 2012, forward, with interest, but crediting Employer against the indemnity benefits due to the extent Claimant received Employer-funded disability benefits. The WCJ ordered that Employer recompense Prior Counsel for the litigation costs he incurred in litigating the claim petition and that Claimant direct her twenty percent (20%) counsel fee to Prior Counsel. Specifically, the WCJ reasoned:

> [A]fter the close of the record, [Claimant] retained new counsel. As prior counsel did all the work culminating in her award of benefits, all counsel fees should go to Larry Pitt and Associates. [Claimant] is advised to file a Petition for Review to formally change counsel if this is still her desire.

(C.R., 7/30/2013 WCJ Decision, at 7.)

On January 30, 2014, the parties filed a petition to seek approval of a compromise and release agreement (C&R petition), and Subsequent Counsel attended the hearing on the C&R petition on Claimant's behalf. The WCJ approved the C&R petition and the resultant attorney's fee was ordered escrowed pending further review by the WCJ regarding the proper allocation between Prior and Subsequent Counsel.

Also pending before the WCJ was Claimant's petition for review of compensation benefits with respect to which Prior Counsel and Subsequent Counsel submitted neither testimony nor affidavits detailing the hours each expended on the claim. Rather than seeking fees based on quantum meruit, both attorneys sought the entirety of the settlement fee escrowed. The WCJ noted that in workers'

3

compensation cases, attorneys' fees are capped at twenty percent (20%) and, therefore, determined that the escrowed fee had to be allotted among counsel. While explaining that Prior Counsel was already compensated for services rendered in the form of a fee with respect to the claim petition, the WCJ reasoned that he was still entitled to a portion of the escrowed amount because the C&R petition was resolved based largely upon his earlier efforts.

Specifically, the WCJ determined that after resolution of the claim petition, Subsequent Counsel "only negotiated the settlement, appeared before th[e] WCJ at the Compromise and Release hearing, incurred no litigation costs, and bore no risk." (C.R., 7/16/2014 WCJ Decision, at 7.) In awarding Prior Counsel $11,600.00 and Subsequent Counsel $20,000.00 of the escrowed fee, the WCJ considered and balanced the following factors: Subsequent Counsel did not defend a contested petition on Claimant's behalf; Prior Counsel assumed the risks of litigation and bore the burden of a reduced fee by credits due Employer, thereby lowering his overall fee with respect to the claim petition; Prior Counsel already received a twenty percent (20%) fee with respect to the claim petition and did not participate in the case after July 2013; and Claimant alleged that she terminated Prior Counsel because he did not communicate with her as desired. Moreover, the WCJ held that public policy favored an allocation to Prior Counsel because a contrary holding would enable "less honorable counsel [to] descend[ ] like birds of prey upon unsophisticated claimants with the sole intent of handling only the compromise and release portion of the case," which would, in turn, discourage counsel from participating in the workers' compensation system. (*Id.*)[2]

---

[2] The WCJ made the following analogy:
**(Footnote continued on next page…)**

4

Prior Counsel appealed to the Board, contending that a subsequent attorney's fee should be limited to quantum meruit for work actually performed, with the balance of the fee being paid to the original attorney. Subsequent Counsel likewise appealed, arguing that Prior Counsel was not entitled to any portion of the fee stemming from the settlement. Emphasizing that under *Mayo v. Workers' Compensation Appeal Board (Goodman Distribution, Inc.)*, "an attorney discharged prior to the time a settlement is reached is not entitled to an additional proportionate share of a contingent fee from settlement proceeds based on relative contributions of the attorneys," the Board reversed and held that Subsequent Counsel was entitled to the entirety of the escrowed fees, notwithstanding the public-policy concerns the WCJ expressed. 109 A.3d 286, 290 (Pa. Cmwlth. 2015).[3] This appeal followed.[4]

---

**(continued…)**

> Imagine for a moment that an individual contracts for passage across the Atlantic Ocean in a time of war. The first party obtains a ship, sails it across the open seas and successfully fights enemy frigates. First party is then replaced within sight of land by a second party. Should the second party receive twice the sum as first party for its efforts? Does the tugboat pulling the ship into port receive twice the renumeration [*sic*] as the ship that sailed across the entire ocean?

(C.R., 7/16/2014 WCJ Decision, at 7.)

[3] The *Mayo* decision was rendered after the WCJ issued his decision below.

[4] This Court's review is limited to determining whether the findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Mayo v. Workers' Compensation Appeal Board (Goodman Distribution, Inc.)*, 109 A.3d 286, 288 n.3 (Pa. Cmwlth. 2015).

## II.

## A.

At the outset, we address Prior Counsel's application to strike Subsequent Counsel's brief on the grounds that it asserts facts which are not of record and are inadmissible, that it contains unfounded allegations regarding Prior Counsel's law firm, and it does not contain citations to the record. First, Prior Counsel challenges Subsequent Counsel's statements regarding the reasons Prior Counsel was discharged. The facts averred in this regard are part of the record—namely, they appear in Claimant's discharge letter which the WCJ admitted as Exhibit J-2. Regardless, with the exception of cases in which a client engages in conduct intended to deprive an attorney of his fee, which conduct has not been alleged here, the reason for a client's discharge of his or her attorney is irrelevant. *See Mager v. Bultena*, 797 A.2d 948, 958 n.13 (Pa. Super. 2002). Therefore, although these statements are supported by the record, they will not be considered in our analysis.

Next, Prior Counsel challenges Subsequent Counsel's assertions with regard to the steps he took after Claimant engaged him. While it is true that he did not submit an itemization of the hours spent on the case, neither did Prior Counsel, and we will consider his efforts, as did the tribunals below. Further, Subsequent Counsel's general assertions that after obtaining the case file, he familiarized himself with it, secured relevant documentation, addressed collateral issues, reinforced client communication, sought the client's trust, and engaged in settlement negotiations with Employer's counsel for five to six hours do not require citations to the record as they are supported by general practice and common sense. For the reasons detailed below, even if we disregard this information, a different outcome does not result.

6

Further, Prior Counsel's argument that "[a]t pages 6 and 7, while recounting the procedural process, [Subsequent Counsel] does not cite to the reproduced record," does not mandate that we strike Subsequent Counsel's brief. (Petitioner's Application to Strike Respondent's Brief, ¶6.) Although Subsequent Counsel acknowledges this technical oversight, for the purposes of this proceeding, the case's procedural history is undisputed. Because these defects are not substantial, we decline to strike Subsequent Counsel's brief. *See* Pa. R.A.P. 105(a) ("These rules shall be liberally construed to secure the just, speedy and inexpensive determination of every matter to which they are applicable."); Pa. R.A.P. 2101 (explaining that where non-compliance with the procedural rules results in "substantial" defects, appropriate action may be taken); *see also Smith v. Pennsylvania Board of Probation and Parole*, 683 A.2d 278, 282 (Pa. 1996) ("Certainly, our rules are not intended to be so rigidly applied as to result in manifest injustice where there has been substantial compliance and no prejudice.").

**B.**

Regarding the merits of the appeal, Prior Counsel contends that the Board erred in relying on *Mayo* because public-policy concerns dictate that the Board focus upon the relative services provided by each attorney. In essence, Prior Counsel argues that it is unfair that his overall fee is less than that of Subsequent Counsel when he performed more work on the case and, ultimately, his efforts led to the settlement of the case, with little contribution from Subsequent Counsel.

These concerns are virtually identical to those raised by prior counsel in *Mayo*.[5] In that case, former counsel filed a claim petition and review petition seeking to amend the description of a claimant's injury in a temporary notice of compensation payable. The WCJ awarded claimant indemnity benefits from March 6, 2009, forward, and claimant's former counsel collected a twenty percent (20%) fee. In February 2012, the employer filed a petition for approval of a compromise and release agreement, but claimant discharged former counsel more than two months before the hearing on the C&R agreement occurred and hired then-current counsel.

Before this Court, former counsel alleged that the fee with respect to the C&R settlement should have been allotted between him and then-current counsel based on the relative amount of work each performed. We rejected that argument, adopting the rationale in *Mager v. Bultena*, 797 A.2d 948 (Pa. Super. 2002), that attorneys do not acquire vested interests in clients' actions.

Specifically, in *Mager*, the Superior Court stated:

> No Pennsylvania appellate court has ever awarded a proportionate share of a contingency fee to a firm discharged by the client well prior to the occurrence of the contingency, for the simple reason that a client may discharge an attorney at any time, for any reason. Once the contractual relationship has been severed, any recovery must necessarily be based on the work performed pursuant to the contract up to that point. Where the contingency has not occurred, the fee has not been earned.

---

[5] In fact, Prior Counsel in this case also served as the claimant's prior attorney in *Mayo*.

797 A.2d at 957–58 (internal footnote omitted).

As such, we denied former counsel's argument in *Mayo*, finding that he was adequately compensated for the services rendered through the fee he received with respect to the claim and review petitions, which fee continued up until the C&R hearing, despite the fact that he was discharged two months prior.

Nonetheless, Prior Counsel urges us to reverse our holding in *Mayo* on the grounds that its application results in "gross injustice" and has a "chilling effect on those who represent injured workers." (Brief for Petitioner, at 13–14.) In so arguing, Prior Counsel asks us to enforce his contingency fee agreement, ignoring the fact that the contingency upon which the fee was based never occurred—that is, Prior Counsel seeks a fee because Claimant's case settled, despite the fact that settlement did not occur while he was engaged.

It is well-settled law that "a claimant has the absolute right to be represented by counsel of her choice." *Bierman v. Workers' Compensation Appeal Board (Philadelphia National Bank)*, 113 A.3d 38, 42 (Pa. Cmwlth. 2015). "A client's right to discharge his attorney for any or no reason and without penalty is an implied term of every attorney-client engagement contract and is based on the unique concepts of trust and confidence that flow from this fiduciary relationship." *Angino & Rovner v. Jeffrey R. Lessin & Associates*, ___ A.3d ___ (Pa. Super., No. 941 MDA 2014, filed January 5, 2016), slip op. at 4. Where the contingency specified in the fee agreement has not yet occurred at the time an attorney is discharged, he cannot enforce the fee provision which is triggered only when the contingency occurs

9

because an attorney does not accrue a vested interest in the action. *See Mayo*, 109 A.3d at 290.

Still, Claimant argues that while these legal principles may apply in other contexts, they should not apply in the workers' compensation context. We disagree. In the workers' compensation context, as in all other legal contexts, a client enjoys an absolute right to discharge counsel. The only difference with respect to workers' compensation cases is that attorneys' fees are statutorily capped at twenty percent (20%). Section 442 of the Act, 77 P.S. §998.[6] However, this distinction has no bearing in the instant case because Prior Counsel is not entitled to the fee derived with respect to the settlement. Contrary to Prior Counsel's argument that he performed more work and is, therefore, entitled to more compensation than

---

[6] Section 442 of the Act provides:

> All counsel fees, agreed upon by claimant and his attorneys, for services performed in matters before any workers' compensation judge or the board, whether or not allowed as part of a judgment, shall be approved by the workers' compensation judge or board as the case may be, providing the counsel fees do not exceed twenty per centum of the amount awarded.

> In cases where the efforts of claimant's counsel produce a result favorable to the claimant but where no immediate award of compensation is made, such as in cases of termination or suspension, the hearing official shall allow or award reasonable counsel fees, as agreed upon by claimant and his attorneys, without regard to any per centum. In the case of compromise and release settlement agreements, no counsel fees shall exceed twenty per centum of the workers' compensation settlement amount.

77 P.S. §998, added by Act of February 8, 1972, P.L. 25.

10

Subsequent Counsel, Prior Counsel's fees are based solely upon the work he performed without regard to the amount of money Subsequent Counsel earned. Because Prior Counsel was compensated for his efforts through receipt of attorney fees regarding the claim petition, despite the fact he was terminated over a month prior to that decision, the Board properly balanced Claimant's right to select an attorney of her choice with both attorneys' expectations of receiving reasonable legal fees. *See Mayo*, 109 A.3d at 290; *see also Bierman*, 113 A.3d at 42 (holding that prior counsel was not entitled to any portion of the settlement proceeds despite the fact he secured a previous settlement offer from the employer which claimant rejected before terminating him and subsequent counsel obtained a far more favorable settlement offer which claimant ultimately accepted).[7]

## C.

Regardless, Prior Counsel argues that the WCJ properly balanced the competing interests of counsel and the Claimant and considered the appropriate public-policy issues. In support of his position, Former Counsel cites *Larry Pitt & Associates, P.C. v. Workers' Compensation Appeal Board (Raymour & Flanagan)* (Pa. Cmwlth., No. 2535 C.D. 2010, filed August 30, 2011), for the proposition that this Court has previously apportioned settlement fees among counsel.

First, it is worth noting that our decision in *Larry Pitt & Associates, P.C.* is unpublished and, therefore, is not binding. *See* Section 414(a) of the

---

[7] Notably, Prior Counsel did not provide any evidence regarding the number of hours he worked on Claimant's case and, therefore, we have no basis on which to assess the fees owed to him under a theory of quantum meruit. *See Mayo*, 109 A.3d at 290.

11

Commonwealth Court's Internal Operating Procedures. Further, this case predates our reported decisions in *Mayo* and *Bierman*, which clarify that an attorney discharged prior to settlement is not entitled to a portion of the settlement fee. Additionally, although Prior Counsel in *Larry Pitt & Associates, P.C.* was awarded $150.00 based on work performed and that amount was taken from the total settlement proceeds otherwise awarded to Subsequent Counsel, the fee given Former Counsel was based exclusively on quantum meruit. It came from the settlement proceeds only because those proceeds were equal to the statutory cap on attorney's fees and, therefore, additional funds could not be awarded, not because the Court determined that the attorneys should share in the settlement proceeds.

Moreover, to the extent Prior Counsel suggests that the Board's decision fails to properly balance the interests of the parties, we disagree. In reaching our holding in *Mayo*, by which the Board found it was bound in this case, we expressly weighed these countervailing interests and found that because attorneys do not accrue vested interests in their clients' actions, they are not entitled to settlement proceeds obtained after they are discharged. Prior Counsel's position does not seek to balance the parties' interests, but rather, seeks to give undue weight to his right to obtain a fee while ignoring a client's fundamental right to engage counsel of his or her choice and to terminate Prior Counsel for any reason or no reason at all.

## D.

Finally, Prior Counsel asserts that to the extent the Act enables a WCJ or the Board to regulate the fees of attorneys appearing before them, the Act violates the separation of powers doctrine because it enables members of the executive branch to

12

regulate members of the judicial branch. He further suggests that in exercising this power, WCJs and the Board usurp the power of our Supreme Court, which maintains sole supervisory power over the regulation of attorneys.[8]

Contrary to Prior Counsel's argument, we have held time and time again that Section 442 of the Act does not violate the separation of powers doctrine. *Samuel v. Workers' Compensation Appeal Board (Container Corporation of America)*, 814 A.2d 274, 277–78 (Pa. Cmwlth. 2002) ("Nor is Section 442 inconsistent with any other rule promulgated by the Supreme Court that regulates the conduct of attorneys."); *see also Seitzinger v. Commonwealth of Pennsylvania*, 25

---

[8] In this regard, Article 5, Section 10(c) of the Pennsylvania constitution provides:

> The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the Judicial Branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions. Notwithstanding the provisions of this section, the General Assembly may by statute provide for the manner of testimony of child victims or child material witnesses in criminal proceedings, including the use of videotaped depositions or testimony by closed-circuit television.

Pa. Const. art. 5, §10(c).

A.3d 1299 (Pa. Cmwlth. 2011) (holding that Section 442's statutory cap on attorney's fees did not impinge on the Supreme Court's supervisory authority over the practice of law or violate the separation of powers doctrine); *Lawson v. Workers' Compensation Appeal Board (Temple University)*, 857 A.2d 222, 225 (Pa. Cmwlth. 2004) (*en banc*) ("Applying the foregoing rationale set forth in *Samuel* to the present matter, we again, for the same reasons, reject Pitt's arguments challenging the constitutionality of Section 442."), *appeal denied*, 870 A.2d 324 (Pa. 2005) Therefore, this argument is without merit.

Accordingly, because the Board correctly applied our precedent in *Mayo*, we affirm its decision.

_____
DAN PELLEGRINI, Senior Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Iris Henry-Aiken,            :
        Petitioner     :
                         :
       v.           : No. 1958 C.D. 2015
                         :
Workers' Compensation Appeal   :
Board (Vanguard Group, Inc.),    :
          Respondent   :
                         :
Petition of:  Larry Pitt, Esq.     :

# **O R D E R**

AND NOW, this 21st day of March, 2016, it is hereby ordered that Larry Pitt, Esq.'s motion to strike the reply brief of Iris Henry-Aiken is denied, and the Workers' Compensation Appeal Board's decision in the above-referenced case is affirmed.

_____
DAN PELLEGRINI, Senior Judge